2024-2226

**United States Court of Appeals
For the Federal Circuit**

**VDPP, LLC,**

*Plaintiff-Appellant*

**v.**

**VOLKSWAGEN GROUP OF AMERICA, INC.,**

*Defendants-Appellee*

Appeal from the United States District Court for the Southern District
of Texas in Case No. 4:23-cv-02961
Judge Lee H. Rosenthal

**APPELLANTS' BRIEF**

Attorneys for Appellants:

Ramey  LLP

/s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923

i

**Claims:**

1. A system for presenting a video, the system comprising:
an apparatus comprising:
a storage adapted to:
store one or more image frames associated with a video; and
a processor adapted to:
reshape a portion of at least one of the one or more image frames; and
cause the one or more image frames to be displayed; and
an electrically controlled spectacle comprising:
a spectacle frame;
optoelectronic lenses housed in the frame, the lenses comprising a left lens and a right lens, each of the optoelectrical lenses having a plurality of states, wherein the state of the left lens is independent of the state of the right lens; and
a control unit housed in the frame, the control unit being adapted to control the state of each of the lenses independently;
wherein each of the lenses has a dark state and a light state; and
wherein when viewing the video the control unit places both the left lens and the right lens to a dark state.

2. An apparatus comprising:
a storage adapted to:
store one or more image frames; and
a processor adapted to:
obtain a first image from a first video stream;
obtain a second image from a second video stream, wherein the first image is different from the second image;
stitch together the first image and the second image to generate a stitched image frame;
generate a first modified image frame by removing a first portion of the stitched image frame;
generate a second modified image frame by removing a second portion of the stitched image frame;
generate a third modified image frame by removing a third portion of the stitched image frame;
wherein the first modified image frame, the second modified image frame, and the third modified image frame are different from each other;
identify a bridge frame;
blend the first modified image frame with the bridge frame to generate a first blended frame;

blend the second modified image frame with the bridge frame to generate a second blended frame;
blend the third modified image frame with the bridge frame to generate a third blended frame;
overlay the first blended frame, the second blended frame, and the third blended frame to generate a combined frame;
display the combined frame.

3. The apparatus of claim 2, further comprising:
spectacles adapted to be worn by a viewer of a video.

4. The apparatus of claim 2, wherein the bridge frame comprises a non-solid color.

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4(a) and Federal Rule of Appellate Procedure 26.1, counsel for Appellants VDPP, LLC ("VDPP") and William P. Ramey, III ("Mr. Ramey") certify the following:

1. The full names of every party represented by the undersigned are VDPP, LLC and William P. Ramey, III.

2. The real parties in interest are VDPP, LLC and William P. Ramey, III.

3. VDPP, LLC has no parent company and there is no publicly held corporation that owns 10% or more of the stock of the corporation. Mr. Ramey is an individual.

4. The names of all law firms and the partners or associates that appeared for VDPP, LLC in the district court or that are expected to appear in this Court are:

William P. Ramey, III of Ramey LLP

Jeffrey E. Kubiak of Ramey LLP (not expected to appear)

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47. 4(a)(5) and 47.5(b).

None.

6.     Organizational victims and bankruptcy cases.

None.

iv

Date:  December 2, 2024

/s/ William P. Ramey, III
William P. Ramey, III

**TABLE OF CONTENTS**

STATEMENT OF RELATED CASES .......................................................1

STATEMENT OF JURISDICTION .........................................................1

ISSUES PRESENTED............................................................................2

STATEMENT OF THE CASE................................................................3

STATEMENT OF RELEVANT FACTS .................................................4

SUMMARY OF ARGUMENT................................................................8

STANDARD OF REVIEW ...................................................................10

ARGUMENT .......................................................................................12

    I.     THE DISTRICT COURT'S ORDERS ................................................12

          A.    The Dismissal of VDPP's Case Without Leave to Amend is a Sanction.................................................................................14

          B.    Dismissal Without Leave to Amend Was An Abuse of Discretion ................................................................................16

    II.    THE DISTRICT COURT ABUSED ITS DISCRETION IN ISSUING THE AWARDED SANCTIONS ......................................................18

          A.    The Case Does Not Support a Sanction under § 285................18

          B.    Mr. Ramey's Conduct Does Not Support a Sanction Under § 1927 or the Court's Inherent Power .........................................21

          C.    Had VDPP Been Afforded a Chance to Amend, it Would have Asserted that it Could Show Substantial Compliance ..............22

          D.    VDPP Was Not Required to Mark ...........................................25

          E.    VDPP is Not Required to Produce Evidence of Compliance with § 287 in an Initial Pleading.................................................28

          F.    VDPP's Initial Disclosures and Communications with Opposing Counsel do Not Support Sanctions .........................31

vi

G.  VDPP Does Not File Frivolous Suits.......................................36

H.  Adding a Patent to an Amended Complaint Does Not Support the Awarded Sanctions But Rather Illustrates Why an Amended Complaint Would Not be Futile.................................37

I.  The Misquote from *Rude* Does Not Support Sanctions............38

J.  VDPP's Motion to Amend the Judgment Was Proper..............40

K.  The District Court's Additional Bases For Sanctions...............41

L.  There is Nothing Improper About Filing Many Patent Infringement Lawsuits..............................................42

M.  Unified Patents Filing of a Reexamination is Immaterial to any Issue in this Case.......................................47

N.  Sanctions Handed out in Other Cases Are Irrelevant...............48

O.  The Policy Reasons for Requiring Marking under §287(a) and the Damage Provision of §286 are Balanced with Encouraging Settlement Without Admitting Infringement............................48

III.  THE DISTRICT COURT IMPOSED A RULE 11-LIKE SANCTION ON VDPP WITHOUT DUE PROCESS.............................................50

IV.  THE DISTRICT COURT ABUSED ITS DISCRETION IN SANCTIONING MR. RAMEY JOINTLY AND SEVERALLY UNDER §285, §1927 AND ITS INHERENT POWER...................53

A.  Fifth Circuit Authority Discourages Section 1927 Awards Under These Circumstances..........................................54

B.  No evidence of "bad faith, improper motive, or reckless disregard of duty" under *Vaughan*.........................................58

C.  Failure to "identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits.".....................59

D.  Failure to "differentiate between sanctions awarded under different statutes to facilitate review on appeal.".....................60

vii

V.    THERE IS NOTHING INHERENTLY IMPROPER ABOUT BEING A NON-PRACTICING ENTITY THAT SETTLES CASES FOR MONEY ......................................................................................61

VI.   CONCLUSION AND RELIEF SOUGHT...........................................62

# TABLE OF AUTHORITIES

**Cases**

*AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353 (Fed. Cir. 2017)........................45

*Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633 (Fed. Cir. 2015) ..........................61

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017) ......................................................................................................32

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 950 F.3d 860 (Fed. Cir. 2020) ...................................................................... 26, 49, 56, 57

*Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683 (Fed. Cir. 2008).......................61

*Browning v. Kramer*, 931 F.2d 340 (5th Cir.1991) .................................................22

*Bryant v. Mil. Dep't of Mississippi*, 597 F.3d 678 (5th Cir. 2010) ..........................34

*California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)..................................................................39

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)...............................................................................................3, 22

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371 (Fed. Cir. 2017) ...........44

*ClearValue, Inc. v. Pearl River Polymers, Inc.* 560 F.3d 1291 (Fed. Cir. 2009).................................................................................. 35, 52

*Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122 (1908)........................................................................61

*Dragon Intellectual Property, LLC v. DISH Network L.L.C.,* 101 F.4th 1366 (Fed. Cir. 2024)................................................................................ 53, 54

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)......................................................................................61

*Edwards v. Gen. Motors Corp.*, 153 F.3d 242 (5th Cir.1998)................................22

*EEOC v. General Dynamics Corp.*, 999 F.2d 113 (5th Cir. 1993).........................51

*Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1322550 (E.D. Tex. Apr. 6, 2017)...........................................................50

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) ........................43

*EscapeX IP LLC v. Google LLC,* Case No. 22-cv-08711-VC, 2023 WL 5257692 (N.D. Cal. Aug. 16, 2023) ................................................................48

*Evans v. Jeff D.*, 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) ...............45

*F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566 (5th Cir. 2008) ................................. 11, 51

*Fed. Deposit Ins. Co. v. Maxxam, Inc.,* 523 F.3d 566, 580 (5th Cir. 2008) .............51

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 572 U.S. 559, 134 S.Ct. 1744, 188 L.Ed.2d 829 (2014).........................................................................10

*In re Gillig*, 807 F. Supp. 2d 604 (N.D. Tex. 2011) .................................. 32, 34, 35

*Jenkins v. Methodist Hosp. of Dallas,* 478 F.3d 255 (5th Cir. 2007) ......................51

*Johnson v. Teva Pharms. USA, Inc.*, 758 F.3d 605 (5th Cir. 2014) ........................10

*Keck v. Mix Creative Learning Ctr., L.L.C.,* 116 F.4th 448 (5th Cir. 2024)...........59

*Lans v. Digit. Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001)............... 26, 29, 57, 58

*Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112 (D.D.C. 1999)............................58

*Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302 (Fed. Cir. 2016)...................... 16, 27, 41

*Maxwell v. J. Baker, Inc.*, 86 F.3d 1098 (Fed. Cir. 1996) ......................................18

*Miller v. Bittner,* 985 F.2d 935 (8th Cir.1993) ......................................................35

*Motorola, Inc. v. United States*, 729 F.2d 765 (Fed. Cir. 1984)........................ 18,32

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014)................................................ 10, 19, 21, 35, 47

*Ow v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ..............................40

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152 n.11 (6th Cir. 1978) ................................................................................................................39

*Park-In-Theatres v. Perkins*, 190 F.2d 137 (9th Cir. 1951) ................. 14, 19, 20, 29

*Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017)..........45

*Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519 (5th Cir. 2002)...................11

*Realtime Adaptive Streaming L.L.C. v. Sling TV, L.L.C.*, 113 F.4th 1348 ................................................................ 15, 34, 42, 48

*Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995)........................61

*Rude v. Westcott,* 130 U.S. 152 (1889), 164, 9 S.Ct. 463, 32 L.Ed. 888 (1888) ................................................................ 13, 39, 49

*SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344 (Fed. Cir. 2015) ............................43

*Stitt v. Williams,* 919 F.2d 516 (9th Cir.1990).......................................................21

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564 (Fed. Cir. 1988) ................................................................40

*Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) ...69

*Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, 804 F.3d 1367 (Fed. Cir. 2015).............14

*Tex. Dig. Sys. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), *overruled in part*, 415 F.3d 1303 (Fed. Cir. 2005)................................................................26

*Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019)................................................................45

*Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill,* 561 F.3d 377 (5th Cir. 2009)................................................................18

*United Cannabis Corp. v. Pure Hemp Collective Inc.,* 66 F.4th 1362 (Fed. Cir. 2023) ................................................................54

*Vaughan v. Lewisville Indep. Sch. Dist.*62 F.4th 199 (5th Cir. 2023) .............. 16, 55

*Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 56 S.Ct. 528, 80 L.Ed. 736 (1936)................................................................26

**Constitutional Provisions & Statutes**

28 U.S.C. § 1295 ................................................................1

28 U.S.C. § 1331 ................................................................1

28 U.S.C. § 1338(a), & 1367 ................................................................1

28 U.S.C. § 1927 ................................................................ 1, 3, 21

35 U.S.C. § 282 ................................................................48

xii

35 U.S.C. § 285 ........................................................................................x. 1

35 U.S.C. § 286 ................................................................................ 25, 50

35 U.S.C. § 287 ............................................................... 12, 25. 30

**Rules & Regulations**

Fed. R. App. P. Rule 26.1 ................................................................. iv

Fed. R. App. P. Rule 32 .....................................................................62

Fed. R. Civ. P. Rule 11 ......................................................................52

Fed. R. Civ. P. Rule 15 ......................................................................18

## TABLE OF ABBREVIATIONS

***Parties***

| | |
|---|---|
| Appellants | VDPP, LLC and William P. Ramey, III |
| Appellee | Volkswagen Group of America, Inc. |

***Patents-in-Suit***

| | |
|---|---|
| The '452 patent | U.S. Patent 9,426,452 ("Patent-in-Suit") |

***Defined Terms***

| | |
|---|---|
| District Court | United States District Court for the Southern District of Texas, the Honorable Judge Lee H. Rosenthal |
| Court of Appeals | United States Court of Appeals for the Federal Circuit |
| Asserted Claims | Claims 1-4 of the '452 |
| Awarded Sanctions | The dismissal granted by Appx0013-Appx0024 and the sanctions issued by the District Court under 35 U.S.C §285, 28 U.S.C. §1927, and inherent power as set forth in Appx0001-Appx0004 and Appx0005-Appx0011. |

All emphasis in this brief is added unless otherwise indicated.

## STATEMENT OF RELATED CASES

Each of the consolidated cases has been on a previous appeal:

1. *None.*

The following cases are known to be pending in courts that will directly affect or be directly affected by this Court's decision in the pending appeal:

1. *None.*

## STATEMENT OF JURISDICTION

The District Court has jurisdiction per 28 U.S.C. §§ 1331, 1338(a), and 1367 and this Court has appellate jurisdiction per 28 U.S.C. § 1295 for all consolidated cases.

This Appeal is an appeal of sanctions under 35 U.S.C. § 285, 28 U.S.C. § 1927 and the District Court's inherent power.[1]

VDPP, LLC ("VDPP") and William P. Ramey, III ("Mr. Ramey") timely filed a Notice of Appeal on August 7, 2024, after the District Court denied VDPP's Motion to Amend the Judgment.[2] An amended notice of appeal was filed on August 14, 2024 after the District Court set the amount for the monetary portion of the sanction.[3] The Notices of appeal were corrected on November 18, 2024 to list

---

[1] Appx0001-Appx0011.
[2] Appx1658-Appx1659.
[3] Appx1660-Appx1661.

1

William P. Ramey, III in the caption rather than in the body as specified in the original notices of appeal.[4]

## ISSUES PRESENTED

1.  Is the failure to plead compliance with 35 U.S.C. § 287 case dispositive when no opportunity to amend is given by the District Court?  Does the rule of reason analysis control a determination of compliance with § 287 when the entity asserting the patent is a non-practicing entity or other entity with no products to mark? Is evidence of compliance with § 287 required in an opening pleading?

2.  Are sanctions under § 285, § 1927, and the court's inherent power a broad reservoir of power allowing a District Court to sanction a party twice for the same conduct?  Is an alleged pleading violation covered by Rule 11 sanctionable under § 285, § 1927, and inherent power when the litigant is not given the opportunity to cure?  Is an alleged discovery violation covered by Rule 37 sanctionable under § 285, § 1927 and inherent power when the litigant is not provided an opportunity to comply?

3.  Are sanctions under § 1927 proper when a district court fails to allege that the attorney unreasonably and vexatiously multiplies the proceedings through bad faith, with an improper motive, or reckless disregard of the duty owed to the

---

[4] Appx1836-Appx1839.

court? Are sanctions under a court's inherent power proper if the district court fails to allege an abuse of the judicial process?

## STATEMENT OF THE CASE

This is an appeal of sanctions issued to VDPP, LLC ("VDPP") and its counsel William P. Ramey, III ("Mr. Ramey") for the filing of an original complaint where no leave to amend was allowed by the District Court. The sanctioning of VDPP and Mr. Ramey for filing the complaint, without providing leave to amend, is a dangerous precedent that will have a chilling effect on all patent owners, but especially non-practicing entities ("NPEs") seeking to enforce the rights granted by the government. VDPP and Mr. Ramey are appealing both the dismissal of the action and the further monetary sanctions issued by the District Court. VDPP was initially and improperly *sanctioned* by the dismissal without the chance to amend. The dismissal, followed by the § 285, § 1927, and inherent power[5] sanctions (collectively, "Awarded Sanctions") against VDPP and Mr. Ramey are an abuse of discretion under the facts of this case. The District Court's very first Order in the matter was a dismissal with prejudice, without leave to amend. The District Court's next Order was a sanction under § 285, 28 U.S.C. §1927, and inherent power. VDPP and Mr. Ramey never had the

---

[5] The District Court never uses the term 'inherent power' in any Order but did cite to *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

opportunity to address the District Court's reasons for dismissing the case prior to the dismissal with prejudice. Then, both VDPP and Mr. Ramey received a $207,543.70 monetary sanction for the same protected conduct. VDPP and Mr. Ramey seek a reversal of both the dismissal and monetary sanctions. The District Court's Awarded Sanctions violate both Federal Circuit and Fifth Circuit precedent. The Awarded Sanctions will have a chilling effect on small patent owners seeking relief for patent infringement and must be reversed.

## STATEMENT OF RELEVANT FACTS

Appellant VDPP, LLC ("VDPP") sued Appellee Volkswagen Group of America, Inc. ("Volkswagen") on August 11, 2023, alleging that Volkswagen infringed the claims of U.S. Pat. No. 9,426,452 ("the '452 Patent") (the "Patent-in-Suit").[6] On October 13, 2023, Volkswagen moved to dismiss the Original Complaint.[7]

On November 3, 2023, counsel for Volkswagen informed counsel for VDPP by e-mail that it would not oppose a two-week extension of time to respond to the motion to dismiss but did not agree to an extension of time to amend the complaint.[8] On November 18, 2023, Plaintiff responded to the motion to dismiss[9] and included

---

[6] Appx0085-Appx0096.
[7] Appx0136-Appx0173.
[8] Appx1662-Appx1663.
[9] Appx0174-Appx0184.

a draft amended complaint that would have been filed had Volkswagen not opposed an extension to do so.[10]  In the draft amended complaint, to address many of Defendant's concerns with the Original Complaint as it expressed by letter,[11] VDPP substantially revised its allegations.[12]

Mr. Ramey contacted VDPP's President and representative, Dr. Ron Karpf, for any prior settlement agreements and was told there were none.[13]

On March 27, 2024, the District Court issued a Memorandum and Opinion dismissing with prejudice VDPP's Original Complaint[14] and issued Final Judgment.[15]

Volkswagen filed a Motion to Declare the Case Exceptional on April 10, 2024.[16]

VDPP filed a Motion to Amend the Judgment and for Reconsideration on April 18, 2024.[17] Volkswagen responded to the Motion to Amend the Judgment on April 30, 2024.[18]

On July 11, 2024, the District Court issued a Memorandum and Order finding the

---

[10] Appx0174-Appx0253.
[11] Appx0155-Appx0162.
[12] Appx0340-Appx0346.
[13] Appx1478.
[14] Appx0013-Appx0024.
[15] Appx0012.
[16] Appx0944-Appx0971.
[17] Appx1268-Appx1281.
[18] Appx1419-Appx1440.

case exceptional and denying VDPP's Motion to Amend the Judgment ("District Court's Order Finding Case Exceptional").[19]  The District Court's Order Finding Case Exceptional found "VDPP and its counsel, William P. Ramey, III of Ramey LLP, jointly and severally liable for the reasonable attorneys' fees that Volkswagen incurred in defending this case."[20]

On July 29, 2024, Volkswagen filed its sealed accounting of attorneys' fees.[21]  On August 5, 2024, VDPP filed its objections to Volkswagen's requested attorneys' fees, as allowed by the District Court.[22]

VDPP and Mr. Ramey filed a Notice of Appeal on August 7, 2024.[23]

The District Court issued a Memorandum and Order awarding $207,543.60 to Volkswagen jointly and severally against VDPP and its counsel Mr. Ramey under § 285, § 1927 and inherent power and the District Court commented that VDPP's objections to Volkswagen's requested fees "fit the classic definition of chutzpah…" and that VDPP displayed nerve in asking the District Court to reduce the fee award.[24]

VDPP and Mr. Ramey filed an Amended Notice of Appeal on August 13, 2024 regarding the following actions by the District Court:[25]

---

[19] Appx0005-Appx0011.
[20] Appx0010-Appx0011.
[21] Appx1545-Appx1654.
[22] Appx1665-Appx1657.
[23] Appx1658-Appx1659.
[24] Appx0001-Appx0004.
[25] Appx1660-Appx1661.

- The Memorandum of Decision (Appx0013-Appx0024) granting Defendant, Volkswagen Group of America, Inc.'s Motion to Dismiss (Appx0136-Appx0173).

- Final Judgment (Appx0012).

- The Memorandum and Order (Appx0005-Appx0011) granting Defendant Volkswagen Group of America, Inc.'s Motion for Attorneys' Fees (Appx-0944-Appx1267) finding Plaintiff VDPP, LLC and Willaim P. Ramey, III of Ramey LLP jointly and severally liable and denying Plaintiff's Motion to Amend the Judgment (Appx1268-Appx1418).

- The Memorandum and Order (Appx0001-Appx0004) granting fee award.

Corrected Notices of Appeal were filed November 18, 2024, to list William P. Ramey, III in the caption whereas he was previously only listed in the body of the Notices of Appeal.[26]

---

[26] Appx1836-Appx1839.

## SUMMARY OF ARGUMENT

The District Court's orders dismissing the case and sanctioning VDPP and Mr. Ramey cannot stand as a matter of law. The District Court treated an alleged failure to mark, without a chance to amend, as case dispositive. If provided the opportunity, VDPP would have plead compliance with the marking statute, specifically explaining that compliance. VDPP, as a nonpracticing entity, has no obligation to mark. Whether VDPP has any licensees that are producing a patented article for or under VDPP's patents is a question of fact under the rule of reason and not proper for dismissal without leave to amend.

The public policies concerning marking under § 287 must be balanced with § 286's provision of a full six-year statute of limitations to allow parties to resolve lawsuits without requiring marking. The purposes of § 287 can be adequately addressed by a settlement license without requiring marking, as it is likely that a settlement licensee would not admit infringement and thus have no obligation to mark. Thus, at the pleading stage, the policies of § 287 are not violated if marking compliance is not pleaded and can be cured by an amended complaint.

VDPP and Mr. Ramey challenge the District Court's granting of further sanctions under § 285, § 1927, and inherent power after the District Court already

8

sanctioned VDPP by dismissing the case without leave to amend. VDPP and Mr. Ramey seek to have the dismissal sanction and further monetary sanctions reversed.

The District Court's finding that the filing of an original complaint warranted sanctions under § 285, § 1927, and inherent power was an abuse of discretion. The District Court sanctioned VDPP and Mr. Ramey for errors in its Original Complaint and the position both took with regards to patent marking for a non-practicing entity. Whether alone or considered together, these issues do not, as a matter of law, render this case exceptional or sanctionable, especially when leave to amend was not granted.

The conduct complained of by the District Court is covered by other sanction provisions, which should have been invoked before reaching the sanction of dismissal with prejudice, let alone the more severe sanctions under § 285, § 1927, and the court's inherent power. These sanctions are not meant to be catch-all sanctions. The District Court's Order finds that VDPP's case was sanctionable based on (1) alleged pleading issues that should have been handled under Rule 11 and (2) alleged issues with discovery that should have been handled by Rule 37. Instead, the District Court improperly used § 285 sanctions, which are not to be the norm but rather only for those rare cases with extraordinary circumstances where it

would be inequitable *not* to shift fees.[27]  Section 1927 sanctions are only for when an attorney unreasonably and vexatiously extends the litigation.  Inherent power sanctions are limited to when a lawyer or party commits a fraud on the court.  Here, the conduct complained of was not sanctionable under any standard, especially absent the court providing leave to amend, following a well-reasoned opinion.

The District Court sanctioned VDPP and its counsel multiple times for the same conduct, filing an Original Complaint.  The sanctions under § 285, § 1927, and inherent power, are excessive and in contravention of both Federal Circuit and Fifth Circuit authority.  The District Court's Order dismissing the case and the subsequent Order sanctioning VDPP and Mr. Ramey must be reversed.

## STANDARD OF REVIEW

A district court's decision dismissing a case under Rule 12(b)(6) is reviewed *de novo*.[28]

A decision to sanction under 35 U.S.C. § 285 is reviewed for abuse of discretion as to (1) the substantive strength of a party's litigating position considering both the governing law and the facts of the case or (2) the manner in which the case was litigated.[29] However, issues of law may at times be relevant and are reviewed

---

[27] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 549, 134 S. Ct. 1749, 1753, 188 L. Ed. 2d 816 (2014).

[28] *Johnson v. Teva Pharms. USA, Inc.*, 758 F.3d 605, 610 (5th Cir. 2014).

[29] *See, e.g., Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,* 572 U.S. 559, 563, 134 S.Ct. 1744, 1749, 188 L.Ed.2d 829 (2014).

10

*de novo.*[30]

A decision to sanction under 28 U.S.C. § 1927 is reviewed for abuse of discretion.[31]

A decision to sanction under a court's inherent power is reviewed for abuse of discretion.[32]  The questions of whether litigation is frivolous, baseless, or has an "improper purpose" under the auspices of a court's "inherent power" and whether the court may sanction for this purpose, however, are mixed questions of fact and law. Facts underlying a district court's decision to sanction are reviewed for clear error and "its underlying conclusions of law *de novo.*"[33]

---

[30] *Highmark Inc.,* 572 U.S. at 563.
[31] *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002)
[32] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 594 (5th Cir. 2008).
[33] *Id.* at 576–77 (5th Cir. 2008).

## ARGUMENT

## I.    THE DISTRICT COURT'S ORDERS

The District Court first sanctioned VDPP by dismissing its case with prejudice, without providing an opportunity to amend.[34]  The District Court's next order found the case further sanctionable under § 285, § 1927 and the Court's inherent power based on the following:[35]

1.  The patent that VDPP asserted had expired on January 2, 2022, making VDPP's claims for a permanent injunction and damages for future infringement impossible.[36]

2.  VDPP's claim for pre-suit damages could not succeed because VDPP could not claim marking compliance under 35 U.S.C. § 287.[37]

3.  VDPP served initial disclosures omitting its prior settlement agreements.[38]

4.  Dr. Karpf signed a declaration as part of VDPP's opposition to the motion for attorney's fees, which did not mention, much less explain, his denial that settlement agreements licensing the '452 patent existed when he had signed seven out of the eleven.[39]

5.  VDPP's failure to identify any evidence of compliance with § 287, along with the 11 settlement agreements that did not require licensees to comply with marking requirements, demonstrates that VDPP knew or should have known before suing Volkswagen that it could not allege marking compliance.[40]

6.  VDPP's initial disclosures addressed patents not at issue in this case,

---

[34] Appx0013-Appx0024.
[36] Appx0005-Appx0011.
[36] Appx0005.
[37] Appx0005.
[38] Appx0006.
[39] Appx0006.
[40] Appx0006.

12

patents that pertained to a different plaintiff.[41]

7. VDPP had unsuccessfully presented similar allegations in other cases before leveling them against Volkswagen.[42]

8. VDPP renews arguments unsupported by the case law and the record in its motion to amend and for reconsideration.[43]

9. Volkswagen pointed out the futility of VDPP's allegations early in the case and gave VDPP an opportunity to withdraw the allegations. VDPP persisted.[44]

10. In moving for amendment of the judgment and for reconsideration, VDPP doubled down, continuing to make the unsupported arguments it had made in earlier briefs.[45]

11. In its motion for amendment, VDPP asserted policy arguments regarding settlement that are inconsistent with the clear requirement imposed by § 287.[46]

12. VDPP quoted language from *Rude v. Westcott*, 130 U.S. 152 (1889) that is not actually in the case, and *Rude* does not discuss marking at all.[47]

13. In seeking relief under Rule 59(e), VDPP sought leave to assert a different patent.[48]

14. VDPP was so sloppy in its preparation of the case that it alleged that Volkswagen was a Delaware corporation; it is a New Jersey corporation with a principal place of business in Virginia….[49]

15. VDPP asserted the '452 patent in 21 cases.[50]

16. VDPP asserted the 58 cases involving the '452 patent.[51]

17. Unified Patents filed an *ex parte* reexamination proceeding against the

---

[41] Appx0006.
[42] Appx0006.
[43] Appx0006.
[44] Appx0006.
[45] Appx0006.
[46] Appx0006.
[47] Appx0006.
[48] Appx0007.
[49] Appx0005-Appx0007.
[50] Appx0010.
[51] Appx0010.

'452 patent.[52]

18. VDPP's counsel filed exceptional lawsuits under section 285.[53]

19. Volkswagen pointed out a number of cases in which courts have awarded attorneys' fees against patent client of VDPP's counsel [sic].[54]

Notably, the District Court did not allege that there was an inadequate pre-suit investigation for VDPP's infringement allegations.  It is not clear that the District Court ever considered VDPP's infringement allegations.  While Volkswagen may disagree with infringement, its fee motion does not assert that the claim charts accompanying the complaint illustrated an inadequate pre-suit investigation.[55]  It is undisputed that lawyers at Ramey LLP worked with technical resources to develop the claim chart for the Original Complaint.[56] The case was well prepared and was not brought with mere 'surmise and suspicion.'[57]  Mr. Ramey admits there were errors, but the errors were of the type that an amended complaint would have cured.

**A. The Dismissal of VDPP's Case Without Leave to Amend is a Sanction**

The District Court issued its Order awarding fees after the case was dismissed with prejudice, without ever providing VDPP leave to amend its pleading.[58]  If the

---

[52] Appx0010.

[53] Appx0010.

[54] Appx0010.

[55] Appx0944-Appx0971, *generally*.

[56] Appx1477.

[57] *See Park-In-Theatres v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951).

[58] *See, e.g., Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, 804 F.3d 1367, 1380 (Fed. Cir. 2015).

14

District Court determined that sanctions were appropriate, the sanction of dismissal alone was sufficient, and no further sanction under § 285, § 1927 or inherent power was warranted. Prior to the dismissal, VDPP did not have any guidance from the District Court that its pleading needed to be amended.[59] The case was still at the pleading stage. Volkswagen's letter is no substitute for an opinion of the District Court.[60]

The underlying dismissal with prejudice was premised on the District Court's determination that VDPP could not get damages as it had not plead compliance with § 287, the marking statute.[61] As this Court has said, § 287 is not an affirmative defense, but rather a limitation on damages:

> Section 287 is thus a limitation on damages, and not an affirmative defense. ... Compliance with § 287 is a question of fact.[62]

Failure to plead compliance is not a failure to pre-emptively address an affirmative defense. Contrary to this Court's clear case law, the District Court's dismissal treated the failure to plead compliance as case-dispositive, as a failure to pre-emptively address an affirmative defense (or other defense). *Arctic Cat Inc.* only

---

[59] Appx0013-Appx0024.

[60] *See, e.g., Realtime Adaptive Streaming L.L.C. v. Sling TV, L.L.C.*, 113 F.4th 1348, 1357 (Fed. Cir. 2024).

[61] Appx0018-Appx0022 and Appx0024.

[62] *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).

found that the failure to comply was a limitation on damages and not a fact warranting dismissal at the pleading stage.[63]

## B. Dismissal Without Leave to Amend Was An Abuse of Discretion

If provided a chance to amend, VDPP would have addressed the District Court's Memorandum and Opinion dismissing the case.[64] There is nothing exceptional, it is not an 'extraordinary circumstance,' for VDPP to make an argument in its response to the motion to dismiss under the facts of this case, even if the District Court later determined otherwise.[65] This is not a case where VDPP or Mr. Ramey ignored the District Court's Order. Here, the District Court dismissed the Original Complaint with prejudice and VDPP had no opportunity to comply with the District Court's Order. Had VDPP ignored the District Court's Order, the argument here would be very different.

Volkswagen's Motion to Dismiss argued that, because VDPP settled cases with Facebook, Acer and TTE Technology, VDPP had an obligation to require Facebook, Acer and TTE Technology to each patent mark the accused products.[66] However, Volkswagen's pronouncement alone reads too much into a dismissal.

---

[63] 876 F.3d at 1366.
[64] Appx0013-Appx0024.
[65] *See, e.g., Mankes v. Vivid Seats Ltd.*, 822 F.3d 1302, 1312 (Fed. Cir. 2016); *Vaughan v. Lewisville Indep. Sch. Dist,* 62 F.4th 199, 206 (5th Cir. 2023).
[66] Appx0148-Appx0153.

16

While a dismissal with prejudice may function as a *de facto* license as the suit cannot be brought again, without more, it in no way triggers a marking requirement.

After the case was closed, in its Motion for Fees, Volkswagen attached as exhibits the eleven settlement agreements that VDPP produced in its discovery correspondence with opposing counsel.[67]  The District Court then considered the settlement agreements as evidence that VDPP had an obligation to mark and could not collect damages as it had not produced evidence of compliance.[68]  However, a statement that VDPP dismissed a lawsuit with prejudice, settled lawsuits, or even entered into a settlement agreement is not enough to show that the respective products that are unmarked patent articles subject to § 287. None of these dismissals or settlement agreements, on their own, trigger the marking requirement.  Moreover, because the case was closed, VDPP had no chance to respond showing substantial compliance.  Volkswagen's use of the settlement agreements in its Motion for Fees amounted to sandbagging because at that point VDPP could not develop any evidence to show substantial compliance.

In *Artic Cat*, this Court found that the production of a license agreement that licensed the patents to produce a patented article was sufficient to trigger the need to show compliance with the marking requirement.[69]  However, at the pleading stage

---

[67] Appx1030-Appx1167.
[68] Appx0006-Appx0010.
[69] *Arctic Cat Inc.*, 876 F.3d at 1368.

17

in this case, Volkswagen did not come forward with any license agreements or other evidence showing that any prior defendant is *producing* a patented article for or under VDPP's patents. Simply providing that a case was dismissed with prejudice is not sufficient to trigger a marking requirement under § 287, at least at the pleading stage. At the pleading stage, it is enough that a plaintiff pleads compliance with the marking statute, as this Court has held.[70] VDPP was never given that chance, a chance to amend. If provided an opportunity to amend, VDPP would have plead substantial compliance. The District Court's denial of leave to amend must be reversed. Federal Rule of Civil Procedure 15(a) provides that leave to amend pleadings "shall be freely granted when justice so requires."[71] Here, VDPP had not previously amended. However, this entire appeal would be unnecessary had Volkswagen agreed to allow VDPP to amend before it responded to the motion to dismiss, as VDPP requested.[72] Further, if this Court reverses the dismissal with prejudice and allows VDPP an opportunity to amend, the further sanctions under § 285, § 1927 and inherent power must also be reversed.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN ISSUING THE AWARDED SANCTIONS

### A. The Case Does Not Support a Sanction under § 285

---

[70] *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

[71] *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill,* 561 F.3d 377, 391 (5th Cir. 2009).

[72] Appx1662-Appx1663.

In the § 285 context, the United States Supreme Court was clear that an award of fees is not to be a penalty for failure to win a patent infringement suit and is "appropriate only in extraordinary circumstances."[73] The Supreme Court explained that "[t]he provision enabled [Congress] to address 'unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force,' which made a case so unusual as to warrant fee-shifting."[74] *Octane Fitness* cited application of "extraordinary circumstances" from *Park-In-Theatres v. Perkins*, a case that examined Section 285 five years from when it was enacted, and explained:

> the payment of attorney's fees for the victor is not to be regarded as a penalty for failure to win a patent infringement suit. The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear.[75]

The *Park-in-Theatres* court explained that, while Congress gave discretion to the district courts,

> . . . in granting this power, Congress made plain its intention that such fees be allowed only in extraordinary circumstances. The Reports of House and Senate Committees recommending this enactment provided in identical terms that 'It is not contemplated that the recovery of attorney's fees will become an ordinary thing in patent suits, * * * . The provision is also made general so as to enable the court to prevent a

---

[73] *Octane Fitness, LLC*, 572 U.S. at 549.
[74] *Id.*
[75] 190 F.2d 137, 142 (9th Cir. 1951) (internal citations omitted).

19

gross injustice to an alleged infringer.' 1946 U.S. Code Congressional Service 1386, 1387.[76]

The *Park-in-Theatres* court then agreed with the district court's determination that it did not find the suit was brought in bad faith, but concluded that the district court awarded fees in error. The district court based its fee award on its finding that:

> [t]he pleadings … and other papers on file herein indicate that the action was brought upon surmise and suspicion and plaintiff repeatedly delayed proceedings'.[77]

Next, rather than affording unbridled discretion when looking at the merits, the court of appeals examined whether 'the pleadings, interrogatories, answers thereto, requests for admissions and admissions thereto, and the objections, motions for extensions of time and other papers on file herein indicate that the action was brought upon surmise and suspicion' and determined they were not because the infringement allegation as to the admitted operation of one theater took the allegation out of surmise and conjecture.[78] Second, the court of appeals used its own judgment and determined that while there were delays, such delays were not dilatory.[79] Thus, the 'extraordinary circumstances' that the Supreme Court cites as allowing a sanction under § 285 do not include conduct where the infringement allegations are not brought with 'surmise and conjecture' and without more than non-dilatory delays.

---

[76] *Park-In-Theatres*, 190 F.2d at 142.
[77] *Id*. at 143.
[78] *Id*.
[79] *Id*.

Importantly, the appeals court itself examined whether the infringement allegation was brought with 'surmise and suspicion' and not whether the district court simply found the case to be such. The court of appeals also examined whether the delays were dilatory in nature and determined they were not, supplanting the finding of the district court, even under the abuse of discretion standard. This is the standard the Supreme Court approved in *Octane Fitness*, based on Congress's intent.[80]

### B. Mr. Ramey's Conduct Does Not Support a Sanction Under § 1927 or the Court's Inherent Power

Section 1927 provides that a court may require an attorney to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" when the attorney "multiplies the proceedings in any case unreasonably and vexatiously."[81] However, a lawyer should not be sanctioned for failing to abandon his client's case at the drop of a motion, unless there is no colorable defense to the motion that can be advocated and no possible merit to any argument that can be advanced.[82] The Fifth Circuit requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court" to support § 1927

---

[80] *Octane Fitness, LLC*, 572 U.S. at 549.
[81] 28 U.S.C. § 1927 (West).
[82] *Stitt v. Williams,* 919 F.2d 516, 528 (9th Cir.1990).

sanctions.[83]  Section 1927 only authorizes shifting fees that are associated with "the

*persistent* prosecution of a meritless claim."[84]

Similarly, before issuing a sanction under a court's inherent power, the

Supreme Court has cautioned that the court must find fraud or abuse of the judicial

process sufficiently beyond 'exceptional.'[85]  The District Court has identified no

conduct by Mr. Ramey to support a finding that he unreasonably and vexatiously

extending the case with bad faith, an improper motive or reckless disregard.  In fact,

the District Court never even sets forth the "unreasonably and vexatiously" standard

in any of its Orders.[86]  Neither has the District Court identified any conduct by Mr.

Ramey, or VDPP, that would constitute fraud or abuse of the judicial process.

Therefore, the sanctions under § 1927 and the District Court's inherent power must

be reversed.

### C. Had VDPP Been Afforded a Chance to Amend, it Would have Asserted that it Could Show Substantial Compliance

The District Court found that VDPP's insistence that it could recover damages

meant either that VDPP did not do any meaningful pre-suit investigation, or that

VDPP knowingly asserted claims that had no merit.[87] However, VDPP, as a

---

[83] *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998).
[84] *Browning v. Kramer,* 931 F.2d 340, 345 (5th Cir.1991) (emphasis added).
[85] *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).
[86] Appx0005-Appx0011, *generally*; Appx0001-Appx0004, *generally*.
[87] Appx0006-Appx0011.

22

nonpracticing entity, can show substantial compliance with the marking statute, because compliance with § 287 is a fact question and not a proper basis for dismissal, if plead.[88]  If allowed to amend, VDPP would have so plead.  When the failure to mark is caused by someone other than the patentee, the court may consider whether the patentee made reasonable efforts to ensure compliance with the marking requirements. The rule of reason is consistent with the purpose of the constructive notice provision—to encourage patentees to mark their products in order to provide notice to the public of the existence of the patent and to prevent innocent infringement.[89]  Here, VDPP would have presented evidence that establishes, under the facts of this case, that it did comply with the express language of § 287, the exact position it defended in the motion to dismiss, that it did not need to mark.[90]  VDPP should have been given the chance to amend as it requested.[91]

Had VDPP been afforded a chance to amend, it would have alleged that VDPP has never sold a product.  VDPP is a non-practicing entity, with no products to mark. VDPP pled all statutory requirements to obtain pre-suit damages.  Further, all conditions precedent to recovery were met.  Under the rule of reason analysis, VDPP

---

[88] *Maxwell*, 86 F.3d at 1111.
[89] *Id*.  at 1111–12.
[90] Appx0178-Appx0179.
[91] Appx0179; Appx0186-Appx0253., *generally*).

did take reasonable steps to ensure marking by any licensee producing a patented article.[92]

VDPP and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article for or under the VDPP patents. Furthermore, each of the defendant entities in the settlement licenses did not agree that they were infringing any of VDPP's patents, including the Patents-in-Suit, and thus were not entering into the settlement license to produce a patented article for VDPP or under its patents. Further, to the extent necessary, if given the opportunity, VDPP would have limited its claims of infringement to method claims and thereby removed any requirement for marking.

To the extent that Volkswagen identifies an alleged unmarked product produced for VDPP or under VDPP's patents, VDPP would develop evidence in discovery to either show that the alleged unmarked product does not practice the Patents-in-suit and that VDPP has substantially complied with the marking statute. Notably, Volkswagen failed to identify any alleged patented article for which Section 287(a) would apply.

The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the

---

[92] *Arctic Cat Inc.*, 876 F.3d at 1366.

article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and would require marking. All settlement licenses were to end litigation and thus the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286 which allows for the recovery of damages for six years prior to the filing of the complaint.

VDPP understood that (1) the prior settlement licenses were to end litigation between the defendant entity and was not a license where the defendant entity was looking to sell a product under any of the VDPP's Patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between VDPP and defendant entity; (3) defendant entity did not believe it produces any product that could be considered a patentable article under 35 U.S.C. § 287; and, (4) VDPP believes it has taken reasonable steps to ensure compliance with 35 U.S.C. § 287.

Each settlement license that was entered into between the defendant entity and VDPP was negotiated in the face of continued litigation and, while VDPP believes there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

### D.    VDPP Was Not Required to Mark

The marking statute, 35 U.S.C. § 287, only allows a patent holder to mark the

25

patent number on a commercial embodiment of its invention so as to give notice of its patent to the general public. But the marking statute only applies to "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States."[93] Therefore, an individual or entity that does not does not practice the claimed invention – like VDPP – is not required to plead that it marked its products or otherwise complied with the marking statute at least until the defendant identifies specific unmarked products.[94] This Court has supported this position by holding that the recovery of damages is not limited by the absence of marking where there are no products to mark.[95]   Compliance with the marking statute is a question of fact.[96] Thus, as an entity that does not practice the claimed invention, VDPP may recover damages even absent notice to an alleged infringer.[97] VDPP had several arguments for why it was not required to mark, including the fact that  VDPP could assert method claims alone,[98] but the District Court's dismissal with prejudice ensured those arguments would not be made.  This factor is directly relevant in any inquiry

---

[93] 35 U.S.C. § 287(a) (West).

[94] *See Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 398, 56 S.Ct. 528, 80 L.Ed. 736 (1936).

[95] *Tex. Dig. Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002), overruled in part, 415 F.3d 1303 (Fed. Cir. 2005).

[96] *See Lans v. Digit. Equip. Corp.*, 252 F.3d 1320 (Fed. Cir. 2001).

[97] *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020).

[98] Appx1280-Appx1281.

considering whether sanctions are appropriate as it shows that VDPP did not litigate its case in an unreasonable manner, as it could have amended and only asserted method claims. Thus, the District Court erred as a matter of law for finding that VDPP's failure to plead and prove compliance with the marking statute, without being provided the chance to amend, litigated its case in an unreasonable manner. Thus, it cannot support a finding of exceptionality. Even if this Court decides otherwise, VDPP's pleadings are a good faith effort to change the law and should not serve as the basis for an award of fees.[99]

At the pleading stage, before any evidence is introduced, VDPP should have been provided the chance to amend if the District Court determined that VDPP's pleading failed to comply with its obligations under the marking statute. Absent that opportunity to amend, it is an abuse of discretion for the District Court to later issue the Awarded Sanctions based on a failure to prove compliance with the marking statute.

VDPP was also denied its due process rights when Volkswagen was allowed to raise potential licensees in its motion to dismiss, and settlements in its motion for fees, because all of the documents upon which it relied were outside the original pleadings, and by that time the case was closed. The District Court compounded VDPP's lack of due process by not allowing VDPP to amend and address the

---

[99] *Mankes*, 822 F.3d at 1312.

settlement licenses. The issue might have been different if the District Court had provided the chance to amend and then dismissed, or had VDPP not amended when given the chance by the Court, but that is not what happened here. Therefore, consideration of the District Court's dismissal of the underlying action is also relevant to the determination of whether the District Court abused its discretion in awarding fees under § 285.

### E. VDPP is Not Required to Produce Evidence of Compliance with § 287 in an Initial Pleading

The District Court's finding that the Awarded Sanctions were justified is an abuse of discretion. This finding was based in part on the fact that VDPP had previously accused multiple devices of infringing the '452 patent, that those cases had settled, and the defendants continued to sell the patented products. The District Court concluded VDPP was required to produce evidence that these entities marked the accused products in its initial pleading.[100] The District Court cites to *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*[101] in support but, as previously noted, this Court has held § 287 is not an affirmative defense, but rather a limitation on damages.[102]

Compliance with § 287 is not an affirmative defense that must be

---

[100] Appx0005.
[101] 876 F.3d 1350, 1366 (Fed. Cir. 2017).
[102] *Id.*

preemptively plead and challenged.  The District Court's dismissal treated the failure to plead and prove compliance at the pleading stage as case-dispositive, as an affirmative defense (or other defense).  That is not the law from this Court.  *Arctic Cat Inc.* only found that the failure to comply was a limitation on damages and not a fact warranting dismissal at the pleading stage,[103] especially dismissal without leave to amend.  Considering the Section 285 sanction, under the test from *Park-In-Theatres v. Perkins*, this case did not have the 'extraordinary circumstances' that allow the award of fees in contravention to the American Rule.[104]

Volkswagen also cited *Lans v. Digit. Equip. Corp.*[105] as supporting dismissal at the 12(b)(6) stage for a failure to mark.[106] However, *Lans* concerned a prior licensee that *was* licensed under the Lans patent to actually produce a patented article, namely a data display system for color graphics display.[107] Here, unlike in the *Lans* case, there was no evidence that any of the three prior settling lawsuits identified by Volkswagen in its reply in support of its motion to dismiss,[108] or the

---

[103] *Arctic Cat, Inc.*, 876 F.3d at 1366.
[104] *See, e.g.,* 190 F.2d at 143.
[105] 252 F.3d 1320 (Fed. Cir. 2001).
[106] Appx0144, Appx0146-Appx0148)
[107] *See, e.g., Lans*, 252 F.3d at 1324.
[108] Appx0282-Appx0296 and Appx0298-Appx0299; Appx0303-Appx0313 and Appx0666-Appx0669; Appx0671-Appx0910 and Appx0912-Appx0914.

eleven licenses identified in its motion for fees,[109] were to produce a patented article for or under VDPP's patents.

Further, by Volkswagen introducing the three prior settling cases in its reply in support of its motion to dismiss, it essentially sandbagged VDPP and making it impossible for VDPP to address them. VDPP attempted to overcome this obstacle in its Motion to Amend the Judgment, by including new evidence in the form of three letters that were sent to each of the prior defendants on April 12, 2024. These letters sought to confirm VDPP's understanding that each of the settlement agreements with the three settling defendants were:

1. Not to produce a patented article under VDPP's patents;

2. But rather to terminate litigation; and,

3. That none of the three settling defendants believed they were producing a patented article under 35 U.S.C. §287.[110]

No prior defendant has responded that VDPP's understanding is incorrect. This is precisely the type of evidence that can be considered under the rule of reason.[111] Moreover, nothing in *Lans* supports a dismissal with prejudice, without leave to amend. In the same way, because Volkswagen sandbagged VDPP with eleven settlement agreements after the close of evidence, VDPP was unable to develop

---

[109] Appx1030-Appx1178.
[110] Appx1410-Appx1412; Appx1413-Appx1415; Appx1416-Appx1418.
[111] *See, e.g., Maxwell*, 86 F.3d at 1111–12.

comparable evidence (such as the letters it sent to the three prior defendants) to refute Volkswagen's claim that the prior settling defendants were producing the patented article without marking. Under the rule of reason, a plaintiff subject to a motion to dismiss should be allowed to develop evidence to refute the defendant's allegations, and it was an abuse of discretion for the District Court to dismiss with prejudice under these circumstances.[112]

### F. VDPP's Initial Disclosures and Communications with Opposing Counsel do Not Support Sanctions

The District Court's Awarded Sanctions were based on its finding that "VDPP represented that there were no settlement agreements, only 'agreements in principle.' [But that] was a lie."[113]  The District Court then referenced 11 settlement agreements that VDPP produced to Volkswagen under seal as Document number 36.  When VDPP's counsel served VDPP's Initial Disclosures on November 22, 2023, they were operating under the assumption there were none because VDPP's principal, Dr. Karpf, had told them that.[114]  Therefore, when Mr. Cook e-mailed Mr. Kubiak on November 30, 2023, asking whether there were settlement agreements, Mr. Kubiak responded truthfully, based on what Dr. Karpf told Mr. Ramey.[115]  While the District Court found that this was a 'lie,' sanctions are inappropriate in such a circumstance

---

[112] *See, e.g., Maxwell*, 86 F.3d at 1111–12.
[113] Appx0006.
[114] Appx1478.
[115] Appx1019-1020.

31

because an attorney is "entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable."[116]

This error is understandable and should not be used as a basis for sanctions against Mr. Ramey or VDPP, because Dr. Karpf was genuinely mistaken about the settlement agreements. Dr. Karpf is an elderly man who has been diagnosed with a memory disorder, and, although he is the President of VDPP, LLC, he is also 80 years old. Thus, the District Court's statement that VDPP's representations regarding prior settlement agreements "was a lie" is inaccurate, at best.[117] Rather, VDPP's disclosures were wrong due to a misunderstanding between its counsel and its elderly President, and its initial disclosures were corrected in less than two weeks by communication between counsel, without court intervention. Again, sanctions are inappropriate in such a circumstance because an attorney is "entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable."[118]

Once opposing counsel raised the possibility that prior settlement agreements existed, the lawyers at Ramey LLP went back to VDPP and were able to produce 11 agreements on December 5, 2023.[119] Therefore, for two weeks, Volkswagen did not

---

[116] *In re Gillig*, 807 F. Supp. 2d 604, 619 (N.D. Tex. 2011).
[117] Appx0006.
[118] *In re Gillig*, 807 F. Supp. 2d at 619.
[119] Appx1006-Appx1008.

32

have the settlement agreements. However, the record is clear that VDPP and its counsel worked with Volkswagen's counsel to ensure the case progressed. No court intervention was necessary. The District Court cites this exchange as "the most egregious" factor supporting fees.[120] However, it is not uncommon that clients fail to understand their obligations. The misinformation and the two-week delay in producing the settlement agreements did not prejudice Volkswagen. At the time VDPP filed its response to Volkswagen's motion for attorneys' fees, Mr. Ramey considered having Dr. Karpf file a Declaration disclosing his medical condition as an explanation for the misunderstanding regarding VDPP's prior settlement agreements but decided against it out of a desire to protect Dr. Karpf's privacy. Volkswagen did not raise this two-week delay to the District Court until after the case was closed, in its motion for fees. It was therefore an abuse of discretion for the District Court to use this as a basis for its exceptional case finding. Counsel for VDPP did not knowingly make any inaccurate statement to opposing counsel, or the District Court, and, upon learning of the settlement agreements, immediately began working with opposing counsel to resolve the issue. The response of VDPP and Mr. Ramey did not amount to unreasonable conduct, but rather demonstrates what is supposed to happen when an error occurs. It was an abuse of discretion for the District Court to find otherwise.

---

[120] Appx0007.

The District Court also faults Dr. Karpf for not addressing the failure to produce the settlement agreements in his declaration.[121] However, Mr. Ramey's declaration explained that Dr. Karpf told him there were no agreements.[122] This explanation is in the record, and it was an abuse of discretion for the District Court issue the Awarded Sanctions in whole or in part because Dr. Karpf did not put the same evidence in the record.[123]

Further, in determining whether sanctions should have been assessed, VDPP and Mr. Ramey's conduct should not be judged "with the lens of 20/20 hindsight."[124] While Rule 11 is not at direct issue in this appeal, reference to the Rule 11 standard is appropriate, because the filing of a pleading is at issue. § 1927 requires an even higher standard of culpability than Rule 11.[125] A district court "is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading was submitted."[126] Further, "[w]hat constitutes reasonable inquiry may depend on such factors as . . . whether [the attorney] had to rely on a client for information as to the facts underlying the

---

[121] Appx0006.
[122] Appx1478.
[123] *See, e.g., Realtime Adaptive Streaming L.L.C.*, 113 F.4th at 1359.
[124] *See, e.g., Id.*.
[125] *Bryant v. Mil. Dep't of Mississippi*, 597 F.3d 678, 694 (5th Cir. 2010).
[126] *In re Gillig,* 807 F. Supp. 2d at 618–19 (citing Fed. R. Civ. P. 11, Advisory Committee note (1993 Amendment)).

pleading, motion or other paper ..."[127] Here, Mr. Ramey and his co-counsel relied upon Dr. Karpf's memory regarding settlement agreements, which later proved to be wrong. But under the "snapshot" rule, Mr. Ramey's reliance is not sanctionable under § 1927 or the court's inherent power.[128] Nor should Dr. Karpf's error be sanctionable against VDPP under § 285 or the court's inherent power.[129]

Further, the Fifth Circuit recognizes that discovery violations are to be handled under Rule 37.[130] "Discovery violations are appropriately addressed through the application of *Rule 37*," and recharacterizing discovery violations does not remove the applicability of Rule 37.[131] Here, alleged errors in Initial Disclosures—which Volkswagen did not complain about  until its motion for attorneys' fees--should not be a factor considered for an exceptional case finding. Nor should this error support other sanctions, especially since VDPP and its counsel corrected the error within 2 weeks.[132]

Notably, the same Rule 37 violation –VDPP's error regarding the existence of prior settlement agreements -- served as both the basis for dismissal of the underlying suit and as the basis for the Awarded Sanctions.  Since neither VDPP's

---

[127] *In re Gillig,* 807 F. Supp. 2d at 618–19.
[128] *Id.*
[129] *See, e.g., Octane Fitness, LLC*, 572 U.S. at 549, 134 S. Ct. at 1753.
[130] *Id.*
[131] *ClearValue, Inc. v. Pearl River Polymers, Inc.,* 560 F.3d 1291, 1309 (Fed. Cir. 2009).
[132] Appx0982-Appx0984; Appx1006-Appx1008.

or Mr. Ramey's conduct was sufficient to support dismissal as a sanction,[133] the same conduct cannot not make the case exceptional or otherwise sanctionable as to Mr. Ramey under § 1927.[134]

### G.   VDPP Does Not File Frivolous Suits

The District Court further erred in finding that VDPP had unsuccessfully presented similar allegations in other cases before leveling them against Volkswagen.[135] The District Court references *VDPP, LLC v. Mazda Motor of Am., Inc.*, No. 8:24-cv-00571 (C.D. Cal.) and *VDPP LLC v. NEC Corp. of Am.*, No. 3:24-cv-00566 (N.D. Tex.) for alleged support.[136] However, the District Court provides no further evidence of the number or amount of settlement offers VDPP made in other cases involving the Asserted Patent.[137] Therefore, the District Court's consideration of these other cases, without more, is not enough to support a finding of exceptionality or other sanction and is an abuse of discretion.[138]

The District Court cites no evidence from which to conclude that VDPP has a history of filing frivolous lawsuits or that it engaged in litigation misconduct,

---

[133] *See, e.g., ClearValue, Inc.,* 560 F.3d at 1305-6.

[134] Mr. Ramey does not dispute that, as lead counsel, he is responsible for the conduct of the underlying case in this matter. However, he wishes to note that the statement to opposing counsel of which Volkswagen complained was made by his co-counsel, Mr. Kubiak. Appx1019.

[135] Appx0006.

[136] Appx0006.

[137] Appx0005-Appx0011, *generally*.

[138] *Thermolife Int'l LLC*, 922 F.3d at 1362.

because there is none. The evidence of record establishes that it is the common practice of Ramey LLP to make settlement offers based on the stage of the case, where the offer will often increase as the case progresses.[139] The mission of Mr. Ramey's firm, Ramey LLP, is to make patent litigation available to all patent owners with valid infringement claims. By efficiently litigating patent infringement cases, Mr. Ramey is able to level the playing field for small patent owners who would otherwise be unable to file suit against large corporations infringing their patents. Ramey LLP tries to make patent infringement litigation affordable for those patent infringement cases where the potential damages make the case unattractive to most firms. Mr. Ramey believes all meritorious claims can be pursued and all intellectual property owners deserve representation and access to the courts. That Volkswagen finds itself accused of infringing patents is not a commentary on Ramey LLP but rather the business practices of Volkswagen. Surely public policy disfavors any rule requiring potential damages in the seven figures before a patent infringement lawsuit can be brought.

## H. Adding a Patent to an Amended Complaint Does Not Support the Awarded Sanctions But Rather Illustrates Why an Amended Complaint Would Not be Futile

The District Court further supported its Awarded Sanctions at least in part on

---

[139] Appx1261.

37

VDPP's Rule 59(e) Motion, which included argument on adding a new patent.[140] However, the proposed additional patent was to explain what would have been presented in an amended complaint. In the context of patent law, adding a patent to an amended complaint is not improper:

> Multiple courts have held that adding new patents to a case does not cause prejudice….[141]

The *Universal* court noted the importance of allowing a plaintiff to file an amended complaint in a patent law case, citing Supreme Court precedent:

> Nor should it be surprising that an amended complaint may modify the specific theories of infringement alleged from the initial complaint.[142]

VDPP should have been allowed to amend its complaint and add a patent if it so desired. If VDPP had been permitted to add a patent asserting only method claims, it would have removed any marking requirement. Therefore, it was error for the District Court to find an amended complaint futile, even if this Court determines VDPP could not otherwise plead compliance with § 287.

## I. The Misquote from *Rude* Does Not Support Sanctions

The District Court's Order also makes much of VDPP's misquotation of *Rude v. Westcott.* In VDPP's Motion to Amend the Judgment and for Reconsideration

---

[140] Appx0007.

[141] *Universal Ent. Corp. v. Aruze Gaming Am., Inc.*, No. 219CV01657RFBNJK, 2022 WL 17095156, at *3 (D. Nev. Nov. 18, 2022).

[142] *Id.*

38

under Rule 59(e), VDPP states, "[f]urther, license fees negotiated in the face of a threat of high litigation costs 'may be strongly influenced by a desire to avoid full litigation.'"[143] In support of this statement, VDPP cites *Rude v. Wescott,*[144] and, although this exact quote does not appear in *Rude,* the following language does:

> It is not clear when the payment was made, but it would seem that it was made in part under a threat of suit . . . and to avoid future litigation. … Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for a settlement.[145]

Thus, *Rude* does logically support the quoted statement. Further, a simple Westlaw search reveals that numerous courts, including the Sixth Circuit, this Court, and the Eastern District of Texas, have similarly "misquoted" *Rude.* VDPP's motion pulled the misquote from one of these other opinions. In *Fenner Investments, Ltd. v. Hewlett-Packard Co.,*[146] the court quoted the language above from *Rude* and then continued as follows:

> *. . . see also Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1164 n.11 (6th Cir. 1978) (observing "[l]icense fees negotiated in the face of a threat of high litigation costs 'may be strongly influenced by a desire to avoid full litigation'" (quoting *Rude,* 130 U.S. at 164)). [147]

---

[143] Appx1279.
[144] 130 U.S. 152, 164, 9 S.Ct. 463 [468], 32 L.Ed. 888 (1888).
[145] 9 S.Ct. at 468.
[146] Civ. Act. No. 6:08-CV-273, 2010 WL 1727916, at *1 (E.D. Tex. April 28, 2010).
[147] *Fenner Investments, Ltd. v. Hewlett-Packard Co.,* Civ. Act. No. 6:08-CV-273, 2010 WL 1727916, at *1 (E.D. Tex. April 28, 2010) (emphasis added).

This same error not only occurred in the *Fenner* case and in *Panduit,* but was also made by this Court when it requoted this language from *Panduit:*

> License fees negotiated in the face of a threat of high litigation costs "may be strongly influenced by a desire to avoid full litigation."[148]

And, although Mr. Ramey certainly regrets the error, this singular misquote cannot rise to the level of an error requiring sanctions.

## J. VDPP's Motion to Amend the Judgment Was Proper

It was also an abuse of discretion for the District Court to support the Awarded Sanctions on VDPP's decision to file a Motion to Amend the Judgment. The District Court argued that VDPP for allegedly "doubling down" by continuing to make unsupported arguments –but this is wrong, because each argument in the Motion to Amend was supported under the law. The District Court's Awarded Sanctions are a manifest injustice as the District Court either disregarded, misapplied, failed to recognize controlling precedent, or failed to apprehend this Court's case law on patent marking.[149] As explained in Section I(A), VDPP is required to plead compliance with § 287, but that pleading does not mean VDPP has to produce *evidence* of compliance at the pleading stage, before evidence is taken, or that VDPP is not allowed to plead compliance that would later be judged under the rule of reason

---

[148] *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564, 1572 (Fed. Cir. 1988).

[149] *Ow v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000).

as set forth by the Court.[150] The District Court further abused its discretion in basing the Awarded Sanctions on VDPP's advocated policy statements, because those policy statements are consistent with the case law from this Court or, at a minimum, a permissible, good faith effort to change the law. [151]

### K. The District Court's Additional Bases For Sanctions

The District Court found that "VDPP made sloppy errors, over and over, from obviously incorrect venue allegations, an incorrect address for Volkswagen, to initial disclosures about an unrelated patent, to serving discovery despite an agreed upon and court-ordered stay pending resolution of the motion to dismiss."[152] The District Court further found that these errors supported a finding of exceptionality. However, while counsel for VDPP regrets the errors and has implemented additional checks in his practice to eliminate like errors in the future, Volkswagen was properly served with the lawsuit, and although discovery was served, there was no action by VDPP or Mr. Ramey to make Volkswagen respond or otherwise act. Moreover, the initial disclosures referenced the correct patent, by number, and mentioned no other patent.[153] And while there was some additional text that did not relate to the identified patent, Volkswagen failed to raise this issue with the District Court until

---

[150] *Maxwell*, 86 F.3d at 1111-1112.
[151] *Mankes*, 822 F.3d at 1312.
[152] Appx0009.
[153] Appx1011-Appx1013.

41

its Motion for Fees. It is hard to understand how these errors support the Awarded Sanctions, especially as VDPP had proposed an Amended Complaint that would have cured most, if not all, of the errors in the Original Complaint[154] and most of the errors alleged in Volkswagen's red flag letter.[155]

It was a further abuse of discretion for the District Court to support its Awarded Sanctions on Volkswagen's letter to VDPP,[156] as it is not clear what about the letter, viewed independently of all else, constitutes a reason that VDPP would need to dismiss its complaint. The District Court offered no explanation in its Memorandum and Opinion.[157]  It is not uncommon that defendants send letters.  In this case, VDPP responded to Volkswagen's letter and defended its infringement position, the merits of the case.[158]

**L. There is Nothing Improper About Filing Many Patent Infringement Lawsuits**

It was an abuse of discretion for the District Court to support its Awarded Sanctions at least in part on the fact that VDPP filed many lawsuits and settled them.[159]  Such a finding, on its own, would not show misconduct.[160]  It is true that

---

[154] Appx0186-Appx0190. Mr. Ramey acknowledges and regrets that a reference to injunctive relief remains in the Prayer for Relief in the amended complaint.
[155] Appx0973-Appx0980.
[156] Appx0006-Appx0007.
[157] *See, e.g., Realtime Adaptive Streaming L.L.C.*, 113 F.4th at 1357–58.
[158] Appx0988-0998 and Appx0999-1004.
[159] Appx0006-Appx0007 and Appx0009-Appx0010.
[160] *Thermolife Int'l LLC*, 922 F.3d at 1362.

42

"[a] pattern of litigation *abuses* characterized by the repeated filing of patent infringement actions *for the sole purpose of forcing settlements*, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285."[161] However, this Court has emphasized "that filing a large number of suits does not, by itself, justify an inference of such an improper motive."[162] Here, the District Court's exceptional case finding is based in part on its determination that "VDPP has asserted the '452 patent in 21 cases .... If cases *involving* the '452 patent are added, the number rises to 58 cases. Most settled early, without any merits examination."[163] The District Court drew this conclusion without any evidence of the value of the settlements or other reasoning for settlement. The District Court's consideration of this factor is in error as this Court has stated that filing a large number of cases that settle early is not improper.[164]

In this case, VDPP believed the claims of the Patents-in-Suit applied "to the activities of numerous persons, such as numerous sellers of similar products, and [VDPP believed it had] a legitimate interest in pressing reasonably grounded claims

---

[161] *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015); *see Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–28 (Fed. Cir. 2011).
[162] *SFA Sys.*, 793 F.3d at 1351.
[163] Appx0009-Appx0010.
[164] *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015); *see Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–28 (Fed. Cir. 2011).

against all [] of them."[165] This is normal patent litigation and is not improper. When the District Court dismissed VDPP's Original Complaint with prejudice, without providing any opportunity to amend in line with the District Court's requirements, VDPP filed a motion to amend the judgment to explain its position that, as an NPE entering into only settlement licenses, it did not have an obligation to mark. Thus, VDPP tested the merits of its case.

The District Court's further finding that VDPP's settlement offer supports the Awarded Sanctions is an abuse of discretion, because the District Court never discusses what settlement offer it is considering.[166]  VDPP made an offer to Volkswagen on March 21, 2024, for $29,000.[167]  However, the District Court's Order does not address this offer but rather makes a citation to case law. At that stage of the case, in which there had been only briefing on the motion to dismiss, $29,000 was not nuisance value, but rather a calculated decision to attempt to resolve the matter.

The true issue on this point is that patent litigation is unavailable to most patent holders due to its high cost. Small patent holders are therefore denied access to the courts. Any policy or factor that would further serve to deny access to the

---

[165] *Thermolife Int'l LLC*, 922 F.3d at 1363 *citing Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1375 (Fed. Cir. 2017).
[166] Appx0009-Appx0010.
[167] Appx1006.

44

courts based merely on the value of a case only furthers that injustice. For this reason, the value of a case should not be a factor considered by courts as supporting a sanction. Rather, this Court should do all it can to open the courts to all patent owners with valid infringement claims, regardless of their size or value.

"[T]here is no minimum damages requirement to file a patent infringement case," and "[a]sserting seemingly low damages against multiple defendants—or settling with defendants for less than the cost of litigation—does not necessarily make a case 'exceptional' under § 285."[168] In *Thermolife,* this Court recognized that a patent plaintiff is able to make patent litigation more affordable by distributing common costs over many suits, thus making each suit worthwhile on lower terms.[169] Moreover, as for settlement amounts, a low figure might simply reflect the small size of an individual defendant's potential liability. Indeed, the figure may result from what the Supreme Court has recognized as the normal, legitimate settlement calculus, which includes consideration of litigation costs: specified as a prediction of the amount of liability, discounted by its probability, plus the transaction costs of further litigation.[170] However, in today's patent infringement world, another factor that should be considered by the courts are the high costs of patent infringement

---

[168] *Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1363-4 (Fed. Cir. 2019) *citing AdjustaCam, LLC v. Newegg, Inc.*, 861 F.3d 1353, 1361 (Fed. Cir. 2017).
[169] *Id*.
[170] *Evans v. Jeff D.*, 475 U.S. 717, 734, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986); *see Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1369 (Fed. Cir. 2017).

litigation, which are high enough to take away most patent plaintiffs' access to legal representation.   Liability and damages experts alone can be several hundred thousand dollars with the costs of even small cases getting into the seven figures.

The AIPLA Economic Survey for 2023, when this lawsuit was filed, states that when damages are less than $1 million, the costs of suit per patent for simple technologies is $300,000 through discovery and claim construction, and another $600,000 per patent to take the case through trial and appeal.[171]  When the damages are between $1 million and $10 million, those numbers increase to $600,000 and $1 million per patent, respectively.  Where the damages alleged are between $10 million and $25 million, those numbers increase to $1.5 million and $3 million per patent, respectively.  Where damages alleged exceed $25 million, those numbers further increase to $1.5 and $3.625 million per patent.  The report adds that for complex technologies, these reported costs can increase by up to 50%.[172]

Accordingly, patent litigation has become so expensive as to make it almost impossible for most patent owners to enforce their patents, in large part due to the litigation practices of large corporate defendants, such as Volkswagen, whose aggressive defense tactics commonly make the costs higher than necessary.  Further, there is no evidence, or anything in the record here, to indicate that VDPP sought

---

[171] *AIPLA Report of the Economic Survey 2023* at 61.
[172] Id.

46

nuisance-value settlements while pressing baseless infringement contentions. The District Court never commented on the strength of VDPP's infringement position, which was central to the merits of the case.[173] The District Court made no determination of whether the infringement claims were brought with "surmise and suspicion," the *Park-In Theatres'* analysis approved by the Supreme Court in *Octane Fitness*.[174]

In the present case, the evidence before the District Court was that VDPP worked with opposing counsel to remove potential issues and asked for an extension to respond to Volkswagen's motion to dismiss, but Volkswagen refused to grant an extension to amend the complaint.[175] VDPP then pressed the unresolved issues through its response to the motion to dismiss, specifically requesting leave to amend and attaching an amended complaint,[176] i.e., normal litigation. Thus, VDPP tested the merits of its claims.

### M. Unified Patents' Filing of a Reexamination is Immaterial to any Issue in this Case

It was also an abuse of discretion for the District Court to consider the fact that a reexamination was filed against the '452 patent to support its Awarded

---

[173] Appx0005-Appx0011, *generally*.
[174] The Supreme Court favorably cited *Park-In-Theatre* (from which the "surmise and suspicion" language is drawn) in *Octane Fitness,* 572 U.S. 548-49.
[175] Appx1662-Appx1663.
[176] Appx0186-Appx0253.

Sanction.[177]  Patents are presumed valid.[178]  A filing by a third party does not support

the Awarded Sanctions without adequate explanation of any relevance.[179]

**N. Sanctions Handed out in Other Cases Are Irrelevant**

It was also an abuse of discretion for the District Court to support the Awarded

Sanctions on sanction orders from other courts.[180]  VDPP's counsel admits that other

courts have issued sanctions to other clients and to counsel.  However, those

sanctions involved different facts and law.  The District Court failed to make any

showing that any sanction from another court was relevant to VDPP and its counsel's

actions in this case.  While the District Court cites to a need for deterrence, there is

no explanation of what is to be deterred other than VDPP and its counsel's protected

conduct.  Ramey LLP and its lawyers modify their conduct as needed with every

court order and seek to minimize the occurrence of any sanctions in the contentious

arena of patent litigation.  Importantly,  appeals of the sanctions are pending in two

of the other patent suits raised by Volkswagen in its motion for fees.[181]

**O. The Policy Reasons for Requiring Marking under § 287(a) and the Damage Provision of § 286 Should Be Balanced with Encouraging Settlement Without Admitting Infringement**

---

[177] Appx0007.

[178] 35 U.S.C. § 282.

[179] *See, e.g., Realtime Adaptive Streaming L.L.C.*, 113 F.4th at 1357-1360.

[180] Appx0010-Appx0011.

[181] *See Ortiz & Assoc. Consulting, LLC v. Vizio, Inc.,* Civ. Act. No. 3:23-CV-00791-N, 2024 WL 815553 (N.D. Tex. Feb. 27, 2024); *EscapeX IP LLC v. Google LLC,* Case No. 22-cv-08711-VC, 2023 WL 5257692 (N.D. Cal. Aug. 16, 2023).

The policy of § 287 "serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented."[182]

These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and, in the case of non-practicing entities and settlement licensees, not requiring marking.[183] Volkswagen offered no evidence that the eleven settlement licenses it identified were entered into because any of the Defendants believed they infringed VDPP's patents. Rather, discovery would likely have shown that none of the Defendants admitted to infringement-- thus, none of the Defendants would have marked a product because to do so would be false marking.

Further, license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation.[184] Such licenses may therefore have little to do with whether the parties to the settlement agreed there was infringement. In fact, the courts have long recognized the differences between

---

[182] *Arctic Cat Inc.*, 950 F.3d at 865.
[183] *See,* Ramey, William P., "NPEs Have No Obligation to Mark Under the Statute—and that Should Extend to an NPE's Settlement Licensees." https://ipwatchdog.com/2024/10/17/npes-no-obligation-mark-statute-extend-npes-settlement-licensees/id=182225/; accessed November 23, 2024.
[184] *See, e.g., Rude v. Westcott,* 130 U.S. 152, 164, 9 S.Ct. 463 [468], 32 L.Ed. 888 (1888).

49

settlement licenses and other licenses.[185] In the past, settlement agreements were generally not relevant in a royalty analysis "because in the usual course they do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction."[186] District courts routinely exclude settlement licenses because the potential prejudice and jury confusion substantially outweigh whatever probative value they may have.[187] Thus, settlement licenses are not a typical license between parties to produce a patented article for or under a patent.

Therefore, as there is no evidence at the pleading stage that any prior settlements were anything more than a desire to end litigation, the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286 which allows for the recovery of damages for six years prior to the filing of the complaint.[188] One statute should not be read to the exclusion of the other when both can be complied with through an amended pleading.

## III. THE DISTRICT COURT IMPOSED A RULE 11-LIKE SANCTION ON VDPP WITHOUT DUE PROCESS

VDPP's entire litigation conduct was reasonable. VDPP worked with opposing counsel to address discovery issues without necessitating court

---

[185] *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1322550, at *4 (E.D. Tex. Apr. 6, 2017).

[186] *Fenner Invs ., Ltd. v. Hewlett–Packard Co.,* No. 6:08–CV–273, 2010 WL 1727916, at *1 (E.D.Tex. Apr. 28, 2010).

[187] *See, e,g., id.*

[188] 35 U.S.C.A. § 286 (West).

50

intervention.[189]  Further, VDPP and Mr. Ramey advanced their argument that they did not have an obligation to mark in response to the motion to dismiss.[190]  The fact that the District Court disagreed, when VDPP was not given the chance to amend, does not make the case exceptional.  The facts might be different if VDPP was provided a chance to amend by the District Court but VDPP refused and maintained the same pleading.  However, absent a chance to comply with a duly issued Order, VDPP's conduct, as matter of law, cannot be seen as unreasonable.[191]  The proper vehicle to challenge a baseless pleading is a Rule 11 motion,[192] which was not asserted below.  The District Court's Awarded Sanctions declared the pleading to be baseless but failed to grant leave to amend.  The District Court found the pleading baseless and therefore should have afforded VDPP the chance to amend or withdraw the complaint, as Rule 11 allows:

> (c) Sanctions.
> …
>     (3) *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).
> …
>     (5) *Limitations on Monetary Sanctions.* **The court must not impose a monetary sanction:**
>
>      …

---

[189] Appx0982-Appx0984; Appx1006-Appx1008.
[190] Appx0182–Appx0183.
[191] *See, e.g., EEOC v. General Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993)
[192] *Fed. Deposit Ins. Co. v. Maxxam, Inc.,* 523 F.3d 566, 580 (5th Cir. 2008); *Jenkins v. Methodist Hosp. of Dallas,* 478 F.3d 255, 264 (5th Cir. 2007).

> **(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.**
>
> …. [193]

The District Court issued the Awarded Sanctions without providing VDPP with the chance to amend. The District Court's conversion of a Rule 11 Sanction, without providing VDPP the chance to amend such as through a Show Cause or other order, followed by an award of sanctions for the same conduct, is an abuse of discretion. Just as a court's inherent power is not a broad reservoir to sanction a party, § 285 and § 1927 are likewise not a catch-all or other broad reservoir of power that allows a court to sanction based on its discretion when the alleged offending conduct would be covered by another provision.[194] Here, without question, rule 11 covers pleadings. Here, VDPP was not given a chance to amend.[195] Thus, the District Court issued sanctions under § 285, § 1927, and its inherent power when it could not have done so under Rule 11, without first providing VDPP an opportunity to amend or withdraw.

---

[193] Fed. R. Civ. P. 11(c)(emphasis added).
[194] *ClearValue, Inc.*, 560 F.3d at 1309.
[195] Appx00019.

52

Section 285 is far too often used as a "gotcha" sanction by defendants to cripple patent plaintiffs with viable infringement claims, to further increase the costs of patent litigation and deny access to the courts. There is no basis for the District Court to award fees under § 285 for that which could not be awarded under Rule 11. If the District Court believed the pleading was sanctionable, without basis, VDPP should have been allowed the chance to amend, as Rule 11 allows. Under the facts of the case, considering that VDPP was not given the chance to amend, it was an abuse of discretion to find VDPP's pleadings to be so substantively weak as to support an award of fees.[196]

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN SANCTIONING MR. RAMEY JOINTLY AND SEVERALLY UNDER § 285, § 1927 AND ITS INHERENT POWER

The District Court also abused its discretion in sanctioning Mr. Ramey jointly and severally with his client under § 285, § 1927 and its inherent power. The Federal Circuit has squarely held that "liability for attorneys' fees awarded under § 285 does not extend to counsel."[197]

> The requirement of § 285 that a case be exceptional for the prevailing party to recover attorneys' fees does not create by implication a presumption that liability can extend to counsel.[198]

---

[196] Appx0007-Appx0010.

[197] *Dragon Intellectual Property, LLC v. DISH Network L.L.C.,* 101 F.4th 1366, 1372-73 (Fed. Cir. 2024).

[198] *Id.*

This Court added, "[w]e see no basis in our precedent to allow Appellants to recover § 285 fees from counsel, <u>especially where, as here, exceptionality was based upon Dragon's substantive litigation position</u> and not on counsel's manner of litigating."[199] VDPP's argument regarding its status as a non-practicing entity and its corresponding lack of need to show marking is exactly the kind of substantive litigation position to which *Dragon* is referring, and for which Section 285 sanctions against counsel are inappropriate.

Although the Awarded Sanctions are based on both the patentee bringing an "exceptional case" under § 285 and Mr. Ramey's allegedly "abusive litigation conduct" under § 1927, the standards for fee awards under § 285 and § 1927 are set forth in different statutes, whose interpretation is governed by different federal circuits. It is also not clear from the *VDPP* opinion which arguably objectionable conduct is the basis for each award.

As the Federal Circuit has explained, "[w]e review § 1927 motions under the law of the regional circuit."[200] Thus, the § 1927 sanction award in Awarded Sanctions, a holding from the Southern District of Texas, must be reviewed under applicable Fifth Circuit authority.

### A. Fifth Circuit Authority Discourages § 1927 Awards Under These Circumstances.

---

[199] *Dragon Intellectual Property, LLC,* 101 F.4th at 1372-73 (emphasis added).
[200] *United Cannabis Corp. v. Pure Hemp Collective Inc.,* 66 F.4th 1362, 1367 (Fed. Cir. 2023).

54

In *Vaughan v. Lewisville Indep. Sch. Dist.*[201] the Fifth Circuit held that sanctions against an attorney under § 1927 "were unwarranted because precedent in this circuit did not squarely foreclose his legal argument and because he sought to extend existing law."[202] The court explained that the attorney's argument "is not sanctionable just because the district court concluded it was wrong, particularly given ongoing evolution in court's views [as to the relevant legal issue]."[203] The court added, "[t]his kind of hindsight logic could discourage all but the most airtight claims."[204]

In rejecting sanctions, the Fifth Circuit first quoted Section 1927, and then explained its own specific requirements for a fee award against an attorney under that section:

> A district court may find that the attorney's multiplication of the proceedings was both "unreasonable" and "vexatious." The finding must be based on "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." The district court may award "only those fees and costs associated with the persistent prosecution of a meritless claim. The district court must also make detailed factual findings that "(1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions; (3) differentiate between sanctions awarded under different statutes to facilitate review on appeal."[205]

---

[201] 62 F.4th 199, 206 (5th Cir. 2023).
[202] *Id.* (emphasis added).
[203] *Vaughan,* 62 F.4th at 206.
[204] *Id.*
[205] *Id.* (emphasis added) (internal citations in footnotes omitted).

The District Court failed to follow the requirements of *Vaughan* in multiple respects. It did not discuss make "detailed factual findings" regarding evidence of "bad faith, improper motive, or reckless disregard of duty" by Mr. Ramey, nor did it "identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits," "link the sanctionable conduct to the size of the sanctions," and it certainly did not "differentiate between sanctions awarded under different statutes to facilitate review on appeal."[206] Moreover, the District Court never even held that Mr. Ramey conduct both "unreasonably" and "vexatiously" extended the litigation. Thus, on its face, the § 1927 sanction is invalid and cannot stand.

While the District Court alleges that VDPP's arguments concerning marking requirements were contrary to the law provided in "*Arctic Cat I*, 876 F.3d at 1366-68; *Arctic Cat II*, 950 F.3d at 863,"[207] the cited provision in *Artic Cat I* only provides "alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287"[208] and the cited provision in *Artic Cat II* only reiterates the holding of *Artic Cat I*.[209] The penultimate holding from the cases is that once a patentee begins making or selling a patented article, or its licensees

---

[206] *Vaughan,* 62 F.4th at 206.
[207] Appx0009.
[208] *Arctic Cat Inc.*, 876 F.3d at 1368.
[209] *Arctic Cat Inc.*, 950 F.3d at 863.

beginning making or selling a patented article for or under the licensor's patents, the notice requirement attaches, and the obligation imposed by § 287 is discharged only by providing actual or constructive notice.[210] This Court was clear that "once an alleged infringer identifies products that it believes are unmarked patented articles subject to the notice requirements of § 287, the patentee bears the burden of proving that the identified products do not practice the claimed invention.[211] The present case was at the pleading stage, before any evidence was taken. In contrast, *Artic Cat I* and *Artic Cat II* were at the summary judgment stage. In short, dismissal at the pleading stage is inappropriate because, as this Court has stated, if unmarked products are identified, the patentee then has the opportunity to prove the identified products do not infringe.[212]

In addition, if a settlement agreement in patent litigation can be shown as being made for the purpose of ending litigation, the requirements of § 287 should not attach because the settlement license is not intended as a license to produce a patented article for or under the licensed patents.

As previously discussed in Section II(E), Volkswagen did cite *Lans v. Digit. Equip. Corp.*[213] as allegedly supporting dismissal at the 12(b)(6) stage for a failure

---

[210] *Arctic Cat Inc.*, 950 F.3d at 865.
[211] *Id.* at 863.
[212] *Id.*
[213] 252 F.3d 1320 (Fed. Cir. 2001).

to mark.[214]  But *Lans* concerned a prior licensee, IBM, that was licensed under the Lans patent to actually produce a patented article, namely a data display system for color graphics display.[215] Further, the *Lans* opinion concerned three related appeals from two district court actions wherein a motion to dismiss was affirmed by this Court based on the above referenced evidence of an obligation to mark developed in the prior district court case.[216]  In this case, there is no evidence and VDPP has not been given an opportunity to prove anything.  Certainly, VDPP's legal arguments made in response to Volkswagen's Motion to Dismiss and in its Motion to Amend the Judgment were not so contrary to the law to warrant a sanction against Mr. Ramey under § 1927.[217]

### B. No evidence of "bad faith, improper motive, or reckless disregard of duty" under *Vaughan*.

A large portion of the bases for the sanctions was Mr. Ramey's continuing to press his argument regarding marking requirements for non-practicing entities. Mr. Ramey argued that VDPP, as a non-practicing entity ("NPE") with only settlement licensees not producing patented articles, was not required to comply with § 287, the marketing statute. The District Court, while complaining about the "sloppiness" of VDPP's pleadings and the alleged lack of a good faith basis for VDPP's arguments,

---

[214] Appx0144, Appx0146-Appx0148; *Lans*, 84 F. Supp. 2d at 114.
[215] *See, e.g., Lans*, 252 F.3d at 1324.
[216] *See id. See id*
[217] *See, e.g., Vaughan*, 62 F.4th at 206.

does not discuss the Fifth Circuit's standard for a § 1927 award against counsel, provide detailed factual findings, or state that it has evidence of Mr. Ramey's "bad faith, improper motive, or reckless disregard of duty" to support a § 1927 award.[218] "Before imposing sanctions under § 1927, a court must ensure that, pursuant to the plain terms of §1927, the offending attorney's multiplication of the proceedings was both 'unreasonable' and 'vexatious'; evidence of recklessness, bad faith, or improper motive must be present.[219]

### C. Failure to "identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits."

The District Court's Order also fails to "identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits," as required by *Vaughan.*[220] Instead, much of the Order is based on the District Court's conviction that Mr. Ramey's legal arguments regarding marking were frivolous and wrong. However, to award § 1927 sanctions against counsel, the District Court was required to distinguish the allegedly sanctionable conduct from the reasons it gave for deciding the case on the merits. The Order failed to do so.

Further, the *Vaughan* case also emphasizes that "a party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions

---

[218] Appx0005-Appx0011.

[219] *Keck v. Mix Creative Learning Ctr., L.L.C.,* 116 F.4th 448, 458 (5th Cir. 2024) (cleaned up).

[220] *See Vaughan,* 62 F.4th at 206.

59

under § 1927 when the court ultimately rejects the claim."[221] Rather, "to prevent the courts from dampening the legitimate zeal of an attorney in representing his client, we have interpreted § 1927 as penal and construed it in favor of the sanctioned party. As such, sanctions under the statute are to be 'sparingly applied.' Fees may only be imposed against counsel, not parties."[222]

### D. Failure to "differentiate between sanctions awarded under different statutes to facilitate review on appeal."

The District Court's Order also fails to "differentiate between sanctions awarded under different statutes to facilitate review on appeal," as required by *Vaughan*.[223] Instead, it held that "[t]here is a strong need for deterrence, not only of VDPP, but of its counsel" and that "both VDPP and its counsel have made this case exceptional" before holding "VDPP and its counsel, William P. Ramey, III, of Ramey LLP, jointly and severally liable."[224] Thus, the Order failed to differentiate between the sanctions awarded under § 285 and § 1927 "to facilitate review on appeal," as required under *Vaughan*.[225] Nor did it make the required detailed factual findings in support of its § 1927 award.

---

[221] *See Vaughan,* 62 F.4th at 206 (cleaned up).
[222] *See Vaughan,* 62 F.4th at 206 (cleaned up).
[223] *See id*.
[224] Appx0010-Appx0011.
[225] 64 F. 4th at 206.

## V.    THERE IS NOTHING INHERENTLY IMPROPER ABOUT BEING A NON-PRACTICING ENTITY THAT SETTLES CASES FOR MONEY

There is nothing inherently improper about being a non-practicing entity ("NPE"), as Justice Kennedy explained:

> An industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees.[226]

In fact, this Court has commented on the business of a non-practicing entity, specifying that "[w]here the patentee is an entity that uses patents primarily to obtain licensing fees, its business objectives are premised on monetary relief being sufficient to compensate for infringement."[227] NPEs are subject to the same rules as other parties and the patent statute does not restrict enforceable patent rights to those who practice the patent, even for soon to expire patents as six years of past infringement damages are potentially available.[228]  This Court and the Supreme Court have recognized the legitimate role played by NPEs.[229]

---

[226] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 396, 126 S. Ct. 1837, 1842, 164 L. Ed. 2d 641 (2006).

[227] *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 650 (Fed. Cir. 2015).

[228] *Thermolife Int'l LLC*, 922 F.3d at 1362.

[229] *See Continental Paper Bag Co. v. Eastern Paper Bag Co.*, 210 U.S. 405, 424–25, 28 S.Ct. 748, 52 L.Ed. 1122 (1908); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 703 (Fed. Cir. 2008); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1547 (Fed. Cir. 1995); *cf. eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).

## VI.    CONCLUSION AND RELIEF SOUGHT

VDPP, LLC and William P. Ramey, III seek an Order reversing the dismissal and relieving them from the District Court's Order awarding further sanctions under § 285, § 1927, and its inherent power.

Date:  December 2, 2024                               Respectfully submitted,

                                                                    **Ramey LLP**

                                                                    */s/ William P. Ramey, III*
                                                                    William P. Ramey, III
                                                                    Texas State Bar No. 24027643
                                                                    5020 Montrose Blvd., Suite 800
                                                                    Houston, Texas 77006
                                                                    713-426-3923 (Telephone)

                                                                    ***ATTORNEYS FOR VDPP, LLC***

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on December 2, 2024, by electronic means (by email or CM/ECF).

By:    */s/ William P. Ramey, III*
       William P. Ramey, III


## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)

The undersigned counsel of records for Plaintiff-Appellant, VDPP, LLC, certifies that this Principal Brief of Plaintiff-Appellants complies with the typeface requirement provided in Rule 32(a)(5) and type-volume limitation provided in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.  In preparing this certificate, I relied on word-count program of Microsoft Word 2023.  This Brief contains 13,930 words.

Dated:    December 2, 2024    By:    /s/ William P. Ramey, III
                  William P. Ramey, III